IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**PATRICIA J. WHITT,**

Plaintiff,

v.

**CAROLYN W. COLVIN,**
Commissioner of Social Security,

Defendant.

3:12-CV- 01262 RE

**OPINION AND ORDER**

**REDDEN**, Judge:

Plaintiff Patricia Whitt ("Whitt") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB"). For the reasons set forth below, the decision of the Commissioner is affirmed and this matter is dismissed.

/ / /

1 - OPINION AND ORDER

## BACKGROUND

Whitt filed her application for DIB benefits in January 2009. She has a high school education, and has worked as a bank teller. Whitt alleges disability since July 11, 2008, due to "heart attack, anxiety disorder, panic disorder, hypertension, post traumatic stress disorder, tendinitis, tinnitus, major depressive disorder, and fatty liver. Tr. 159. Whitt was 51 years old on her alleged onset date. Her application was denied initially and upon reconsideration. A hearing was held in February 2011. The Administrative Law Judge ("ALJ") found her not disabled. Whitt's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Whitt had the medically determinable severe impairments of fibromyalgia, osteoarthritis of the hands, hypertension, major depressive disorder, and anxiety. Tr. 23.

The ALJ found that Whitt's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.*

The ALJ determined that Whitt retained the residual functional capacity ("RFC") to perform light work, with no more than occasional contact with the general public. Tr. 25.

The ALJ found Whitt unable to perform her past relevant work. Tr. 36.

The ALJ found Whitt was not disabled because she could perform the representative occupations of motel maid and small products assembler. Tr. 37.

The medical records accurately set out Whitt's medical history as it relates to her claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are

familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Whitt contends that the ALJ erred by: (1) improperly rejecting lay testimony; and (2) improperly determining her RFC.

### I. Lay Witness

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible when the lay testimony repeats the limitations expressed in the claimant's testimony. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

### A. Joey William Whitt

Joey Whitt testified at the February 2011 hearing before the ALJ. Mr. Whitt is Whitt's stepson. He had lived with Whitt for the past two years, and helped out by doing dishes, laundry, yard work, taking out garbage, "just basic-basic duties around the house like, you know, just make sure the house is picked up and cleaned, you know, taking care of the dogs, you know,

3 - OPINION AND ORDER

getting stuff off the top shelf of the food cabinet, stuff like that. Anything that would cause her pain, I'll do for her in a sense." Tr. 87.

Mr. Whitt testified Whitt gets "fatigued real easy, she gets a lot of pain in her joints like around her hips and her elbow area. She cries a little bit more than normal." Tr. 88. Whitt cries three to four times per week. Mr. Whitt or his stepsister do all the driving because Whitt "has a tendency to swerve a little bit," and gets lost easily. *Id.* Whitt becomes fatigued washing the dishes. Mr. Whitt testified his stepmother is easily distracted and she will ask random questions. Tr. 89-90.

### B. Sherman C. Whitt

Sherman Whitt completed a Third Party Function Report on February 21, 2009. Tr. 189-96. He is Whitt's husband. He described the claimant's daily activities as sending their grandson to school, doing "some household work, goes back to bed gets up about 11:30 a.m. gets grandson from bus has lunch takes nap gets up for dinner watches a little TV goes to bed around 11 p.m." Tr. 189. Mr. Whitt noted the claimant helps care for their grandson, with help from her daughter and him, and Whitt is "always tired and at night up and down throughout the night." Tr. 190. Whitt does laundry and household cleaning with her daughter's help. She has good and bad days, and grocery shops about an hour a week, but not alone. Tr. 192. Whitt "sometimes loses focus on what she is doing," she sews daily, but gets frustrated easily. Tr. 193. Mr. Whitt opined Whitt could lift ten pounds, but cannot reach, is forgetful, cannot understand things, forgets what she is doing, cannot concentrate for more than ten minutes, and cannot hear. Tr. 194. Mr. Whitt thought Whitt could walk about 100 yards before requiring ten to fifteen minutes of rest, has trouble handling stress, and at times has trouble riding in a car. Tr. 195.

4 - OPINION AND ORDER

The ALJ stated:

> Her stepson testified that the claimant requires help with basic household chores. He helps take care of the dogs and anything else that might cause her pain. He has noticed she has pain in her hips, gets fatigued easily, and cries more often. He stated that he always drives and that she had not driven in about a year because she gets lost easily and she has a tendency to swerve. He said she had only driven once in the past year or two.

Tr. 27.

The ALJ noted Sherman Whitt's statement and that he "corroborated her statements. He indicated she is only able to go shopping with assistance and do household chores and laundry with her daughter's help." Tr. 26.

The ALJ found the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms less than credible to the extent they were inconsistent with the RFC. Tr. 27. The record indicates that the ALJ considered the lay testimony, but failed to articulate a reason for discounting the testimony. Where lay witness testimony does not describe nay limitations not already described by the claimant, and the ALJ's well supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it is harmless error for the ALJ to fail to articulate those reasons as to the lay testimony. *Molina v. Astrue,* 674 F.3d 1104, 1117 (9th Cir. 2012).

///

///

///

///

///

5 - OPINION AND ORDER

## II. Residual Functional Capacity

Social Security Ruling ("SSR") 96-8p, entitled "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," addresses assessment of a claimant's RFC. SSR 96-8p (available at 1996 WL 374184). The Ruling defines the RFC assessment and instructs the ALJ to make findings in construing a claimant's RFC. The Ruling also instructs the ALJ to consider "all relevant evidence" in making RFC findings, and to address the claimant's exertional and nonexertional capacity. *Id.* at *5-6.

A claimant's RFC is an assessment of what a claimant can do in a work setting despite her mental or physical impairment. Here, the ALJ found Whitt capable of performing a modified range of light work.

Whitt argues that the ALJ failed to include limitations identified by State Agency reviewing doctors in the RFC findings. In her May 2009 review, state agency psychologist Sandra Lundblad, Psy.D., completed a "Mental Residual Functional Capacity Assessment" ("MRFCA") form in which she checked boxes indicating that Whitt's mental impairments impose moderate limitations in her ability to ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to interact appropriately with the general public, the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and the ability to set realistic goals or make plans independently of others. Tr. 320-21. Paul Rethinger, Ph.D., also reviewed the record and agreed with Dr. Lundblad. Tr. 324.

Whitt contends the ALJ erred by not including all of the "moderate" limitations in the RFC identified by Drs. Lundblad on the MRFCA form. The ALJ did not mention either doctor by name, but did discuss the reports. Tr. 29.

The MRFCA form lists twenty functional factors in section I. Section II provides room for remarks, and Section III contains the actual Functional Capacity Assessment. The Social Security Program Operations Manual Systems ("POMS") specifies that the section I of the MRFCA "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment.**" Emphasis in original. Section III of the form contains the actual mental residual functional capacity assessment. *Id.*

In Section III, Dr. Lundblad determined Whitt "should not be required to perform detailed complex tasks...she can easily followed [sic] SRRT [short routine repetitive tasks] and can get along well on a casual basis with others." Tr. 322. Dr. Lundblad found Whitt should not work with the general public, and, due to her anxiety would prefer non-stressful situations, so "it would be better for her to work with things rather than people." *Id.*

"Moderately limited" as used in the MRFCA form means that an individual's capacity to perform the activity is impaired, but, according to the POMS, it does not mean that an individual is precluded from performing that activity. POMS DI 24510.063. "Markedly Limited" is checked "when the evidence supports the conclusion that the individual cannot usefully perform or sustain the activity." *Id.*

Accordingly, the ALJ did not reject the reviewing providers medical opinions in formulating Whitt's RFC. The ALJ's RFC determination is supported by substantial evidence.

7 - OPINION AND ORDER

## CONCLUSION

For these reasons, the ALJ's decision that Whitt is not disabled is based on correct legal standards and supported by substantial evidence. The decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated this 18 day of October, 2013.

_____
JAMES A. REDDEN
United States District Judge

8 - OPINION AND ORDER